GEORGE LLOYD HASSELBACK
Hasselback Law Office, LLC
Gualo Rai Village
PMB 378 PPP
Box 10,000
Saipan, MP 96950
Telephone No.: (670) 235-2496
Email: george@hasselbacklaw.com

Attorney for Plaintiff.

FILED
Clerk
District Court

JAN 24 2017

for the Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| Ladringan, Arlene F., <br><br> Plaintiff, <br><br> vs. <br><br> Mirage Corporation, <br><br> Kondo, Suichi, <br><br> Kondo, Lili, <br><br> Lei, Ishei, <br><br> and <br><br> Does 1-10, <br><br> Defendants. | Case No. CV 17-00001 <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff Arlene F. Ladringan, by and through the undersigned counsel, and alleges as follows:

### JURISDICTION AND VENUE

1. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), including the Pregnancy Discrimination Act of 1978 and the Civil Rights Act of

1991, applies to this matter through the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Article V, §502(a)(2).

2. This Court has jurisdiction over Plaintiffs' claims pursuant to 42 U.S.C. § 2000e-5 and 42 U.S.C. § 1981a(a)(1) and the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

3. The Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1337(a) (proceedings arising under any Act of congress regulating commerce).

4. In the alternative, this Court has jurisdiction pursuant to 28 U.S.C. §1332, as there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.

5. Venue is placed in this Court as at all times relevant to Plaintiff's claims herein, Plaintiff was employed by Defendant Mirage Corporation ("Defendant Mirage") in Saipan, Commonwealth of the Northern Mariana Islands ("CNMI"), the CNMI is the jurisdiction in which the unlawful employment practices of Defendant occurred and the CNMI is the jurisdiction in all tortious conduct alleged in this Complaint took place.  *See* 28, U.S.C. § 1391(b)(2); 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

6. Plaintiff is a citizen of the Republic of the Philippines and, at all times relevant to this action, a resident of the CNMI.

7. Defendant Mirage is a corporate entity organized and operated under the laws of the CNMI, with its principle place of business on the island of Saipan, CNM.

8. Defendant Suichi Kondo ("Defendant S. Kondo") is, upon information and belief, a citizen of Japan and, at all times relevant to this action, a resident of the CNMI.

9. Defendant Lili Kondo ("Defendant L. Kondo") is, upon information and belief, a citizen of the People's Republic of China and, at all times relevant to this action, a resident of the CNMI.

10. Defendant Ishei Lei ("Defendant Lei") is, upon information and belief, a citizen of the People's Republic of China and, at all times relevant to this action, a resident of the CNMI.

11. Upon information and belief, there exist one or more additional defendants (Does 1-10) the identities of whom are not presently known to the Plaintiff, but who were managers, supervisors, employees and/or agents of Defendant Mirage acting within the course and scope of their employment and/or the authority of their agency with regard to the allegations contained in this Complaint and Demand for Jury Trial. Upon ascertaining the true identities of the Does 1-10, Plaintiff will amend her pleadings to identify them more specifically.

12. All the acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, agent, employee or under the direction and control of the other, except as otherwise specifically alleged. The alleged acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the other Defendants' unlawful acts and omissions as alleged herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally. Whenever and wherever reference is made in this Complaint to any act by "Plaintiff's employer," such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly and/or severally.

# FACTS

13. Defendant Mirage, at all times relevant to the allegations contained herein, has owned and/or operated various beauty salons, massage parlors, esthetic salons and/or spas under a variety of business names and at a variety of locations on the island of Saipan, CNMI.

14. Defendant S. Kondo, at all times relevant to the allegations contained herein, was the President of Defendant Mirage, who took an active role in the day-to-day operation of the business and knew, or should have known, of the details of Plaintiff's employment and the employment actions that have given rise to this Complaint and demand for jury trial.

15. Defendant L. Kondo, at all times relevant to the allegations contained herein, was the General Manager of Defendant Mirage, who took an active role in the day-to-day operation of the business and knew, or should have known, of the details of Plaintiff's employment and the employment actions that have given rise to this Complaint and demand for jury trial.

16. Defendant Lei, at all times relevant to the allegations contained herein, was a supervisor employed by Defendant Mirage, who took an active role in the day-to-day operation of the business and knew, or should have known, of the details of Plaintiff's employment and the employment actions that have given rise to this Complaint and demand for jury trial.

17. Plaintiff began to work for Defendant Mirage on or about September of 2011 as a massage therapist. Pursuant to her employment, Plaintiff provided massages to Defendant Mirage's customers at several of its business locations on Saipan.

18. At all times relevant to the allegations contained herein, Defendant Mirage (by and through the actions of and/or pursuant to the direction of Defendant K. Kondo, Defendant L. Kondo and/or Defendant Lei) permitted its customers to smoke cigarettes inside one or more of its business locations on Saipan. Such smoking was permitted in general areas in which other

customers and/or employees were present. There were no measures taken to designate an enclosed area as a "smoking area," nor were there any steps taken to isolate customers and/or employees from the resultant cigarette smoke.

19. Plaintiff's employment with Defendant Mirage brought her into contact with cigarette smoke on a near-daily basis throughout her employment.

20. In March of 2013, Plaintiff discovered that she was pregnant and thereafter informed her employer. Concerned for the health of her unborn child, Plaintiff requested directly to Defendant L. Kondo and/or Defendant Lei that she be re-assigned to a location where she would not be exposed to cigarette smoke in an enclosed space when she worked. Plaintiff was not re-assigned to a new location.

21. On or about May 16, 2013, Plaintiff went to her physician and requested a medical slip instructing her employer about the dangers of cigarette smoke on employees, and especially employees who are pregnant. Plaintiff's physician provided her with a medical slip that contained a restrictive instruction that Plaintiff should avoid smoke from tobacco for the duration of her pregnancy, because such exposure increases the risk of premature labor and decreased birth weight. Plaintiff presented this medical slip to her employer via Defendant L. Kondo and/or Defendant Lei, but was not reassigned to a new location, but rather, was instructed to keep working in locations where customers regularly were permitted to smoke by to Defendant L. Kondo and/or Defendant Lei.

22. Subsequently to providing her employer the aforementioned medical slip, Plaintiff's employer (through Defendant L. Kondo and/or Defendant Lei) demanded that she sign a "waiver letter" that would absolve the employer of any and all responsibility for any harm that might come to her or her unborn child as a result of her exposure to cigarette smoke at her place

of employment. It was made clear by to Defendant L. Kondo and/or Defendant Lei to Plaintiff that if she did not draft and sign such a letter, she would face negative consequences including a reduction in her work hours and/or her eventual termination from her job. Plaintiff told her employer (through Defendant L. Kondo and/or Defendant Lei ) that she would consider any such letter it would provide her to sign, but that she was unable to draft such a letter. She was never provided any such letter by her employer.

23. On or about June 3, 2013, Plaintiff again visited her doctor and again requested a medical slip that would warn her employer about the risks associated with exposing an unborn child to cigarette smoke by requiring its mother to work in an environment where others smoked. This slip also excused her from work from May 29, 2013 to June 5, 2013. Plaintiff again presented this slip to her employer through Defendant L. Kondo and/or Defendant Lei.

24. On or about June 11, 2013, Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("the EEOC") complaining that she was being wrongfully discriminated against because of her pregnancy. Plaintiff's employer was subsequently informed of this complaint.

25. Plaintiff was then transferred from a full-time status to a part-time status by a reduction in her work hours. This transfer was effectuated by a reduction in her hours by Defendant L. Kondo and/or Defendant Lei.

26. When Plaintiff's employer became aware of the complaint to the EEOC that Plaintiff had filed, Plaintiff was brought to a meeting with Defendant L. Kondo who, during the course of this meeting as she had at all times relevant to the allegations herein, spoke on behalf of Defendant Mirage as an employee, officer and/or agent. At this meeting, Plaintiff was told by L. Kondo that she should drop the complaint to EEOC and if she did, her hours would be restored

and she would once again be a full-time employee. Plaintiff again was ordered by Defendant L. Kondo to write and sign a letter that would absolve her employer of any responsibility for injury to her unborn child that resulted from exposure to cigarette smoke at work, but, this time, she was also ordered to include language dismissing the EEOC complaint and absolving her employer of any wrongdoing related to the EEOC complaint. During this meeting, Plaintiff was told by Defendant L. Kondo that if she did not drop the EEOC complaint, her employer would revoke her work permit, thus preventing Plaintiff from legally working in Saipan. Plaintiff again asked to read whatever her employer demanded she sign, but was never given any such document to review.

27. On or about August 21, 2013, Plaintiff filed charges with the EEOC alleging that she was discriminated against because she was pregnant.

28. Subsequently, Plaintiff was completely cut out of the work schedule by her employer through Defendant L. Kondo and/or Defendant Lei.

29. On or about October 14, 2014, Plaintiff's employer informed her (through a letter signed by Defendant L. Kondo) that it would not be renewing her employment contract, nor would it renew her immigration status, ostensibly due to "downsizing" at the company. Upon information and belief, this explanation was a lie intended to legitimize Defendants' discriminatory acts against Plaintiff.

30. All of the actions taken by Defendant L. Kondo and Defendant Lei were, upon information and belief, undertaken at the direction of, undertaken with full knowledge by and/or ratified at a later date by Defendant S. Kondo.

31. The actions of Defendants caused Plaintiff to suffer from extreme emotional distress that manifested in various ways including, but not limited to feelings of nausea, dizziness

and faintness to the point where she had to, on at least one occasion, stop work and sit down or she would have passed out.

## COUNT ONE

## UNLAWFUL EMPLOYMENT PRACTICES

32. Plaintiff incorporates paragraphs 1-30 above.

33. Title 42, Section 2000e-2(a) of the United States Code makes it unlawful for an employer

    a. to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin;

    b. or to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin.

34. Pursuant to 42 U.S.C. § 2000e-2(m), an unlawful employment practice is established when the complaining party demonstrates, among other things, that race, color, religion, sex and/or national origin was a motivating factor for any employment practice, even though other factors may have also motivated the practice.

35. Title 42, Section 2000e(k) defines the terms "because of sex" and "on the basis of sex" to include: "on the basis of pregnancy, childbirth, or related medical conditions."

36. Section 2000e(k) goes on to require that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes,

including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work. . . ."

37. At all times relevant to the claims presented herein, Plaintiff was a member of a class protected by Title VII, including the provisions of the Pregnancy Discrimination Act thereof.

38. At all times relevant to the claims presented herein, Plaintiff was qualified for the position she held with Defendant Mirage.

39. At all times relevant to the claims presented herein, Plaintiff adequately performed her job with Defendant Mirage.

40. Plaintiff had her work hours reduced, because she was pregnant and requested that she be re-assigned away from contact with cigarette smoke due to her pregnancy. This constitutes an unlawful employment practice based on race, color, religion, sex and/or national origin discrimination all in violation of federal law.

41. This unlawful and discriminatory conduct was willful, intentional and performed with malice and/or reckless disregard to Plaintiff's federally protected rights.

42. Plaintiff is entitled to reinstatement and an award of back pay and other equitable relief as the Court may determine.

43. Pursuant to federal law, and in addition to other remedies to which she is entitled, Plaintiff is entitled to compensatory and punitive damages for the unlawful, discriminatory conduct of Defendants in an amount to be determined by a jury after a trial on the merits of Plaintiff's claims.

44. Pursuant to federal law, Plaintiff is also entitled to her costs, including expert costs and reasonable attorney's fees.

45. Given their direct participation in and their knowledge, approval and/or ratification of each and everyone's illegal acts, the Defendants are each jointly and severally liable for the aforementioned acts of discrimination.

## COUNT TWO

## RETALIATION

46. Plaintiff incorporates paragraphs 1-30 above.

47. Title 42, Section 2000e-3(a) makes it unlawful for an employer to take any negative employment action against an employee because they made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing provided for under Subchapter VI of 42 U.S.C. Ch. 21.

48. The actions of Plaintiff in complaining to the EEOC constituted protected activity under applicable federal law.

49. The actions of Defendants in reducing Plaintiff's work hours were taken in direct response to her complaining to the EEOC of discriminatory behavior on the part of Defendants in the workplace. This constitutes an unlawful employment practice in violation of federal law.

50. This unlawful and discriminatory conduct was willful, intentional and performed with malice and/or reckless disregard to Plaintiff's federally protected rights.

51. Plaintiff is entitled to reinstatement and an award of back pay and other equitable relief as the Court may determine.

52. Pursuant to federal law, and in addition to other remedies to which she is entitled, Plaintiff is entitled to compensatory and punitive damages for the unlawful, discriminatory conduct of Defendants in an amount to be determined by a jury after a trial on the merits of Plaintiff's claims.

53. Pursuant to federal law, Plaintiff is also entitled to her costs, including expert costs and reasonable attorney's fees.

54. Given their direct participation in and their knowledge, approval and/or ratification of each and everyone's illegal acts, the Defendants are each jointly and severally liable for the aforementioned acts of discrimination.

## COUNT THREE

## EMPLOYMENT PRACTICE IN VIOLATION OF PUBLIC POLICY

55. Plaintiff hereby incorporates paragraphs 1-30 above.

56. The CNMI has a strong public policy that employees should be able to work in an environment free from cigarette smoke and the inherent dangers the exposure thereto involves. Specifically, this public policy is enshrined in CNMI law, duly passed by the CNMI Legislature, that specifically prohibits smoking in places of employment such as the businesses that were run by Defendant Mirage.

57. The aforementioned public policy would be wholly thwarted in its effect if employers were permitted to demand that employees work in environments in which the employees were constantly exposed to cigarette smoke. Therefore, the strong public policy in the CNMI would also prevent any negative employment action on the part of an employer taken against an employee who sought to have the law banning smoking in places of employment enforced.

58. Plaintiffs work hours were reduced as a direct result of her requests to be moved to a work environment that did not expose her to cigarette smoke and/or her refusal to sign a waiver of rights should that exposure cause her or her unborn child any health problems.

59. As a direct and proximate result of Defendants' violation of the strong public policy of the CNMI, Plaintiff has been damaged in an amount to be determined at trial.

60. These actions of the Defendants were was willful, intentional and performed with malice and/or reckless disregard to Plaintiff's rights and/or the clearly established public policy of the CNMI to the contrary.

61. Given their direct participation in and their knowledge, approval and/or ratification of each and everyone's illegal acts, the Defendants are each jointly and severally liable for the aforementioned acts in violation of the public policy of the CNMI.

## COUNT FOUR

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

62. Plaintiff hereby incorporates Paragraphs 1 through 30 herein.

63. Defendants' conduct as alleged herein was outrageous.

64. Defendants' conduct as alleged herein was intentional and/or reckless.

65. Defendants' conduct as alleged herein caused Plaintiff severe emotional distress.

66. Plaintiff has been damaged as a direct and proximate result of Defendants' intentional infliction of emotional distress in an amount to be proven at trial.

67. Given their direct participation in and their knowledge, approval and/or ratification of each and everyone's illegal acts, the Defendants are each jointly and severally liable for the aforementioned acts of discrimination.

## PRAYER FOR RELIEF

Plaintiff prays for the following relief:

1. Reinstatement to the same position;

2. Back pay from Plaintiff's last day of work to the date of her reinstatement;

3. Compensatory damages pursuant to 42 U.S.C. §1981a in an amount to be determined by a jury

4. Punitive damages pursuant to 42 U.S.C. §1981a in an amount to be determined by a jury;

5. Punitive damages to Plaintiff for Defendants' intentional and outrageous conduct in an amount to be determined at trial;

6. An award of costs (including the costs of experts) and reasonable attorneys' fees; and

7. Any other relief the Court deems just and proper.

Respectfully submitted this January 24, 2017.

_____
GEORGE LLOYD HASSELBACK (F0325)
Attorney for Plaintiff.